## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

RECEIVED

2022 JAN 31 P 3: 18

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

SHARI TRAMMELL BODDIE as the Personal
Representative of the Estate of CHARLES LOUIS
TRAMMELL, SR.

      Plaintiff,

v.

CORRECTIONAL OFFICER SHAMBRIA
BULLARD; CORRECTIANL OFFICER ROBERT
HULL; CORRECTIONAL OFFICER WILLIE LEE,
JR; CORRECTIONAL OFFICER IVEY; CORPORAL
HAMMOND; CORPORAL J BURNS; SOUTHERN
HEALTH PARTNERS, INC.; NURSE JOANNE
WORK; NURSE PRACTITIONER COFIELD; JOHN
DOES 1-10, and JANE DOES 1-10

      Defendants.

**CIVIL ACTION NO.**

3:22-cv-00058

**DEMAND FOR JURY
TRIAL**

## COMPLAINT

Plaintiff Shari Boddie as the Personal Representative of the Estate of Charles

Trammell, Sr files this Complaint against the above-named Defendants and states as

follows:

## PARTIES

1.

- 1 -

Plaintiff Shari Boddie is the duly appointed Personal Representative of the Estate of Charles Louis Trammell, Sr. and resides within the Middle District of Georgia and is subject to the jurisdiction of this Court.

2.

In January – February 2020, Chambers County Sheriff's Office was responsible for the housing, detention and management of inmates and detainees at the Chambers County Jail and tasked with providing adequate medical care to inmates and detainees at the Chambers County Jail.

3.

Charles Trammell, Sr. (hereinafter referred to as "Mr. Trammell") died at the Chambers County Jail on February 5, 2020, from an upper gastrointestinal hemorrhage that the named defendants deliberately ignored for weeks and failed to provide him with adequate medical care in violation of his clearly established constitutional right to receive adequate medical care while being detained at the Chambers County Jail.

4.

Defendant Southern Health Partners, Inc. ("SHP") is a private for-profit corporation that is under a contractual obligation to provide medical care for inmates at Chambers County Jail.   SHP describes itself as a "Partner in affordable Inmate Healthcare" and cites itself as "a leading provider of medical, dental, and mental

health services to inmates in county and city jail facilities." SHP represents that it operates in over 250 correctional facilities in 14 states, including Alabama.

5.

SHP is organized under Delaware law with its principal place of business located at 2030 Hamilton Place Boulevard, Chattanooga, Tennessee 37421. This Defendant is subject to the jurisdiction and venue of this Court.

6.

Defendant Cofield is a SHP nurse practitioner who at all times relevant worked at Chambers County Jail and was one of Mr. Trammell's care providers. This nurse practitioner is identified in Mr. Trammel's medical record attached as Exhibit A. This Defendant is subject to the jurisdiction and venue of this Court.

7.

In January – February 2020, Defendant Cofield was acting under the color of law pursuant to SHP's contract with the Chambers County Jail and within the course and scope of employment with SHP.

8.

Defendant Joanne Work is an SHP licensed practical nurse who at all times relevant to this Complaint worked at Chambers County Jail as an LPN and was one of Mr. Trammell's care providers. This Defendant is subject to the jurisdiction and venue of this Court.

9.

In January – February 2020, Defendant Joanne Work was acting under the color of law pursuant to SHP's contract with the Chambers County Jail and within the course and scope of employment with SHP.

10.

In January – February 2020, Defendant Chambers County Sheriff's Office Corporal J Burns was employed by the Chambers County Sheriff's Office and worked at the Chambers County Jail.  CPL Burns is identified in Mr. Trammell's Intake record attached as Exhibit B.  This Defendant is subject to the jurisdiction and venue of this Court.

11.

In January – February 2020, CPL Burns was acting under the color of law and within the course and scope of his employment with Chambers County Jail.

12.

In January – February 2020, Defendant Chambers County Sheriff's Office Corporal Hammond was employed by the Chambers County Sheriff's Office and worked at the Chambers County Jail.  CPL Hammond is identified in Mr. Trammell's Incident Report record attached as Exhibit C.  This Defendant is subject to the jurisdiction and venue of this Court.

13.

In January – February 2020, CPL Hammond was acting under the color of law and within the course and scope of his employment with Chambers County Jail.

14.

In January – February 2020, Defendant Chambers County Sheriff's Office Correctional Officer Ivey was employed by the Chambers County Sheriff's Office and worked at the Chambers County Jail. Correctional Officer Ivey is identified in Mr. Trammell's Incident Report record attached as Exhibit D. This Defendant is subject to the jurisdiction and venue of this Court.

15.

In January – February 2020, Correctional Officer Ivey was acting under the color of law and within the course and scope of his employment with Chambers County Jail.

16.

In January – February 2020, Defendant Chambers County Sheriff's Office Correctional Officer Shambria Bullard was employed by the Chambers County Sheriff's Office and worked at the Chambers County Jail. Correctional Officer Bullard is identified in Mr. Trammell's Incident Report record attached as Exhibit D. This Defendant is subject to the jurisdiction and venue of this Court.

17.

In January – February 2020, Correctional Officer Bullard was acting under the color of law and within the course and scope of his employment with Chambers County Jail.

18.

In January – February 2020, Defendant Chambers County Sheriff's Office Correctional Officer Willie Lee, Jr. was employed by the Chambers County Sheriff's Office and worked at the Chambers County Jail.  Correctional Officer Lee is identified in Mr. Trammell's Incident Report record attached as Exhibit D. This Defendant is subject to the jurisdiction and venue of this Court.

19.

In January – February 2020, Correctional Officer Lee was acting under the color of law and within the course and scope of his employment with Chambers County Jail.

20.

In January – February 2020, Defendant Chambers County Sheriff's Office Correctional Officer Robert Hull was employed by the Chambers County Sheriff's Office and worked at the Chambers County Jail.  Correctional Officer Hull is identified in Mr. Trammell's Incident Report record attached as Exhibit D.  This Defendant is subject to the jurisdiction and venue of this Court.

21.

In January – February 2020, Correctional Officer Hull was acting under the color of law and within the course and scope of his employment with Chambers County Jail.

22.

The conduct of all the named Defendants was within the exercise of State authority within the meaning of 42 U.S.C. § 1983.

23.

John Does 1-10 and Jane Does 1-10 are unidentified employees of the Chamber County Sheriff's Office and/or Southern Health Partners, Inc. who had a constitutional responsibility to provide inmates and detainees at the Chambers County Jail adequate medical care, including and especially Mr. Trammel.

## JURISDICTION AND VENUE

24.

This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, as well as the Eighth and Fourteenth Amendment of the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§1331, 1343.

25.

This Court has jurisdiction over Plaintiff's state tort claims pursuant to its ancillary and pendent jurisdiction under 28 U.S.C. § 1367.

26.

Venue is proper in the Middle District of Alabama, Eastern Division pursuant to 28 U.S.C. § 1391 (b) because the event giving rise to this claim occurred in Chambers County, Alabama which is situated within the district and divisional boundaries of the Eastern Division of the Middle District of Alabama.

27.

Some or all Defendants reside within the Eastern District of Alabama and are subject to the jurisdiction of this Court.

28.

The matter in controversy exceeds this court's $75,000.00 jurisdictional limit, exclusive of interest and costs.

## FACTUAL BACKGROUND

29.

Charles Trammell, Sr. was arrested for disorderly conduct on January 7, 2020, for allegedly yelling profanities at emergency medical personnel after a welfare check at his home when Mr. Trammell was experiencing a mental episode stemming from his diagnosed schizophrenia.  Instead of taking Mr. Trammell to a hospital for evaluation and treatment, Mr. Trammell was unfortunately arrested for disorderly conduct.

footer- 8 -

30.

After his arrest he was booked at the Chambers County Jail on January 7, 2020.

31.

Mr. Trammell has involuntarily suffered from schizophrenia for decades and had been previously detained at Chambers County Jail.

32.

Chambers County Jail records reflect Mr. Trammell's mental health status and that he was on medication to control his mental health issues.

33.

During intake at Chambers County Jail on January 8, 2020, Mr. Trammell reported to Corporal J Burns "that the government told him not to sign his name to anything or have his prints taken, anymore." Mr. Trammell also reported to CPL Burns "that he has tracking devices implanted in his ankles and chest that were put there by the government to keep track of him." Cpl Burns mockingly noted "I'm unsure if they know he's here."

34.

CPL Burns labeled Mr. Trammell 10-96, which identifies Mr. Trammell as mentally disabled and a psychiatric patient. Corporal Burns did not call for a medical provider to evaluate Mr. Trammell's mental health. Corporal Burns did not

call mental health to make sure that Mr. Trammell should not be hospitalized. Corporal Burns did not try to find out if Mr. Trammell was on any medication or provide him any of the medications, he already had on record with Chambers County Jail. CPL Burns unsympathetically completely ignored Mr. Trammell's mental health status, labeled him crazy and put him in a cell

35.

On January 8, 2020, at around 11:30 p.m. Mr. Trammell threw up twice in his cell and Correctional Officer ("CO") Bullard brought him to the nurse for medical evaluation.

36.

Nurse Joanne Work, who is a licensed practical nurse or LPN, saw Mr. Trammell on that day. Despite Mr. Trammell's serious need for a medical and mental health evaluation, Nurse Work did not contact a physician or any other medical providers. A physical or professional medical and/or mental evaluation was not done at that time. No SHP medical providers, including Nurse Work or Nurse Cofield, properly evaluated Mr. Trammell or provided him with any real medical care.

37.

On January 9, 2020, Mr. Trammell was in medical observation but was not evaluated by a medical provider. He was merely observed every 30 minutes as

resting but nothing was done for him medically to evaluate his condition. SHP staff did not evaluate him or send him for outside care despite his condition.

38.

On January 13, 2020, around 1051 p.m. CO Bullard, CO Brooks and CO Lee were doing lockdown headcount when Mr. Trammel allegedly "refused" to get up for headcount. Mr. Trammell was in pain and in need of medical assistance. None of these correctional officers took Mr. Trammell to get medical treatment. Instead, Mr. Trammell was punished and put-on 24-hour lockdown.

39.

On January 13, 2020, Nurse Work and Defendant Nurse Practitioner Cofield were aware of Mr. Trammell's condition on that day and prescribed him Omeprazole for gastrointestinal issues. Nurse Works and/or Defendant Nurse Practitioner Cofield did not properly evaluate Mr. Cofield and/or send him from outside care. At this time, Mr. Trammell had lost a significant amount of weight since he was booked at Chambers County Jail.

40.

On January 14, 2020, at 11:12 p.m. Mr. Trammell was in his cell and again requested to see a medical provider as he was not feeling well. CO Lee reported this to CO Bullard who stated that no other action was needed. Mr. Trammell was not

- 11 -

provided medical care. Instead, Mr. Trammell was moved to an isolation cell in I-Block where her remained until he died on February 5, 2020.

41.

Chambers County Jail I-Block or Isolation Cells are intended to house inmates who show signs they cannot be housed with other inmates.

42.

On January 18, 2020, at 1:15 a.m. CO Bullard and CO Lee allegedly witnessed Mr. Trammell stick an ink pen in his anus and down his throat. Mr. Trammell threw up again. CO Bullard and CO Lee did not take Mr. Trammell for medical treatment. Mr. Trammell requested medical treatment and was not provided medical treatment. 43.

On January 18, 2020, CPL Hammond, CO Bullard, CO Hull and witnessed and reported Mr. Trammell allegedly "refuse" his food tray all day in the morning at 4:14 a.m., in the afternoon at 12:48 p.m., and at 4:26 p.m. None of these Officers took Mr. Trammell for medical treatment or to be evaluated by a medical provider.

44.

Mr. Trammell did not refuse his food trays but was in too much pain to eat and had lost a substantial amount of weight since he was first booked 11 days earlier.

45.

On January 20, 2020, at 12:20 p.m. CO White, CO Henry and CO Reynolds allegedly witnessed Mr. Trammell "refuse" his food tray as he was in too much pain to eat. Mr. Trammell requested to see a medical provider. None of the officers took Mr. Trammell for medical treatment.

46.

On January 21, 2020, at 4:37 p.m. CO Bolden and CO Hill allegedly witnessed Mr. Trammell "refuse" his dinner tray as he was in too much pain to eat. Mr. Trammell requested medical attention, but these correctional officers would not provide him medical assistance.

47.

On January 23, 2020, at 4:02 a.m. CO Brooks and CO Bullard allegedly witnessed Mr. Trammell "refuse" his breakfast tray as he was in too much pain to eat. Mr. Trammell requested to see a medical provider. None of the officers took Mr. Trammell for medical treatment.

48.

On January 27, 2020, at 12:55 a.m. CPL Hammond and CO Bullard allegedly witnessed Mr. Trammell's tray had an unknown liquid on it as they were collecting food trays. Despite Mr. Trammell's significant weight loss at this time and repeated alleged "refusal" to eat and/or accept food trays. These officers did not take Mr.

Trammell for the medical care he needed. Mr. Trammell had requested medical care, but it was refused.

49.

On January 28, 2020, at 4:00 a.m., CO Bullard and CO Lee allegedly witnessed Mr. Trammell "refuse" his breakfast tray. Mr. Trammell again requested medical care, but it was refused.

50.

On January 31, 2020, CPL Hammond and CO Bullard allegedly witnessed that Mr. Trammell had what appeared to be feces on his dinner tray. Mr. Trammell again asked for medical assistance and none was provided.

51.

On February 1, 2020, at 4:00 a.m. CO Bullard and CO House allegedly witnessed Mr. Trammell refuse his breakfast tray. Mr. Trammell had lost a tremendous amount of weight at this time and requested to see a medical provider. Neither of these officers took Mr. Trammell for medical treatment.

52.

On February 3, 2020, CO Lee allegedly witnessed Mr. Trammell "refuse" his breakfast tray and informed CO Bullard. Mr. Trammell again requested medical assistance, and none was provided. CO Bullard told CO Lee that nothing needed to be done and no further action was necessary.

53.

On February 4, 2020, at 4:50 p.m. Corporal Hosteltler, CO Bolden and CO Henry witnessed Mr. Trammell" refuse" his dinner tray. Despite Mr. Trammell's frail condition, emaciated appearance and history of alleged meal "refusals", none of these officers took Mr. Trammell for medical care.

54.

On February 5, 2020, CPL Burns, CO Lovell and CO Dunn witnessed Mr. Trammell allegedly "refuse" his breakfast tray.

55.

CPL Burns had seen Mr. Trammell's 6'3, 250-pound stature 29 days earlier at booking and on this day saw Mr. Trammell's weakened 6'3 119 pound condition less than four week later and did not contact a medical provider to assist Mr. Trammel or provide him with any medical care.  Instead, CPL Burns ignored Mr. Trammell's serious medical need and kept in an isolated cell until he died later that day.

56.

On February 5, 2020, CO Hull reported that Mr. Trammell allegedly "refused" his afternoon food tray.  Mr. Trammell begged for medical care at that time and CO Hull refused to provide him any medical assistance or contact necessary supervisors and/or medical providers.

57.

Southern Health Partners, Inc. medical staff including Nurse Work and Nurse Practitioner Cofield were aware that Mr. Trammell had suffered extreme weight loss, was isolated in a cell and not eating. The medical staff did not attempt to help him in any fashion.

58.

On February 5, 2020, at 6:05 p.m. CO Bullard and CO Lee were conducting a headcount when CO House called CO Bullard from central advising CO Bullard to check on Mr. Trammell as he appeared non-responsive. CO Bullard and CO Lee went to check on Mr. Trammell and found him nonresponsive. CO Hull also saw Mr. Trammell in that condition. None of these officers rushed to get Mr. Trammell any medical assistance or attempted any life saving measures. None of these officers attempted to help Mr. Trammell in any fashion. These officers left Mr. Trammell's cell without any concern for his life or current condition.

59.

EMS was eventually contacted about 8 minutes after Mr. Trammell was found unresponsive. EMS arrived at Mr. Trammell's cell shortly thereafter. In the meantime, no life saving measures were attempted on Mr. Trammell. Nothing was done to properly evaluate and/or assist Mr. Trammell at all. Mr. Trammell was just left in his isolated cell unresponsive.

60.

Mr. Trammell died of an upper gastrointestinal hemorrhage. He had been experiencing this issue for weeks and no one provided him any real medical care. This condition could have been treated if a medical provider was called.

## COUNT I
### VIOLATION OF SECTION 42 U.S.C. SECTION 1983 - DELIBERATE INDIFFERENCE – ALL DEFENDANTS

61.

Plaintiff re-alleges and incorporate herein the allegations contained in Paragraphs 1 through 60 as if fully stated herein.

62.

The conditions in which a detainee and/or inmate is confined is subject to scrutiny under the Eighth and Fourteenth Amendments of the United States Constitution and subject to actions under Section 1983.

63.

Defendant Southern Health Partners, Inc. had a contract to provide medical services to inmates/detainees at Chambers County Jail. Accordingly, all medical personnel acting pursuant to that contract acted under color of state law.

64.

The acts of Sheriffs, deputies, and jail staff members in a detention facility in addressing detainees and/or inmates' medical care are acts under color of state law.

65.

On January 7, 2020, Mr. Trammell was arrested for disorderly conduct in front of his home.  On January 29, 2020, Mr. Trammell appeared before Judge Calvin Milford Jr. on his disorderly conduct charge and pled guilty.  Mr. Trammell was sentenced to 30 days in jail with credit for time served and the balance suspended. Mr. Trammell was free to be released that day, but he had a warrant hold on him in Fulton County, GA and had to wait to be extradited.

66.

Chambers County Jail held Mr. Trammell as they awaited Fulton County Sheriff's Office to extradite Mr. Trammell for an offense in Fulton County, Georgia.

67.

As of January 15, 2020, Chambers County Jail was no longer holding Mr. Trammell as a detainee for charges stemming from his January 7, 2020, disorderly conduct charge but detained Mr. Trammell for a pending unproven charge in Fulton County.

68.

Mr. Trammell was a detainee at Chambers County Jail throughout his detention at Chambers County Jail from January 7, 2020 to February 5, 2020, and entitled to due process including medical care under the Fourteenth Amendment of the United States Constitution.

69.

Mr. Trammell is a diagnosed schizophrenic and was under medication to control his schizophrenia.

70.

Mr. Trammell had been detained at Chambers County Jail in the past and the jail staff was aware of his medical condition and should have known he was on medication for his condition.

71.

As detailed above Mr. Trammell allegedly experienced several episodes where he "refused" to accept food and eat.

72.

Based on Mr. Trammell's booking sheet and autopsy report, Mr. Trammell lost over 115 pounds over 29 days and in less than four weeks.

73.

At booking Mr. Trammell was 6'2 and weighed 250 pounds. Twenty-nine days later on February 5, 2020, Mr. Trammel had lost 115 pounds and weighed 135 pounds maximum and measured at 6'3 on the date of his death.

74.

The emergency medical personnel who responded to Mr. Trammell being unresponsive noted his weight at 54kg or 119 pounds. That would mean that Mr. Trammell sadly lost 131 pounds in 29 days.

75.

All Defendants witnessed Mr. Trammell's dramatic weight loss and refused to provide him appropriate medical care.

76.

All Defendants witnessed Mr. Trammell request medical assistance on numerous occasions and his need to receive immediate medical attention.

77.

All Defendants deliberately chose to ignore Mr. Trammell's numerous requests for proper medical attention and allowed him to deteriorate slowly in isolation.

78.

Chambers County Jail staff witnessed Mr. Trammell's condition rapidly deteriorate over 29 days as they took him to be showered in the mornings and did nothing to get him the medical care he desperately needed.

79.

Despite witnessing Mr. Trammell "refuse food", rapidly lose weight, express that he was in pain, nauseous and disoriented, all Defendants ignored his cries for help and refused to provide him the medical care he was entitled.

80.

Mr. Trammell suffered a serious medical condition while detained at Chambers County Jail in that he was experiencing an upper gastrointestinal bleed that needed immediate medical attention to be treated.

81.

An upper gastrointestinal hemorrhage is something that can occur over a period of time and needs immediate medical attention to be treated.

82.

Mr. Trammell's need for medical treatment was obvious to Chambers County Jail staff.

83.

All Defendants deprived Mr. Trammell of rights and privileges afforded to him under the Eighth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. § 1983.

84.

All Defendants, individually and collectively, had an obligation to make sure that detainees/inmates at Chambers County Jail received reasonable medical care when needed.

85.

All Defendants, individually and collectively, had an obligation to ensure that the serious medical needs of detainees/inmates detained at Chambers County Jail were timely and adequately addressed.

86.

In violation of Mr. Trammell's constitutional rights, all Defendants failed to attend to Mr. Trammell's serious medical condition and did not provide him medical care when he was in obvious physical distress and needed medical care.

87.,

Defendants' failure to adequately attend to Mr. Trammell's serious medical condition caused his death.

88.

Defendants' conduct evinced a deliberate indifference to the serious medical needs and safety of Mr. Trammell.

89.

All Defendants knew or should have known that their failure to provide Mr. Trammell medical care could result in him suffering permanent injury or harm.

## COUNT II – NEGLIGENCE
## SOUTHERN HEALTH PARTNERS, INC., NURSE JOANNE WORK, NURSE PRACTITONER COFIELD, JOHN DOE AND JANE DOE

90.

Plaintiff re-alleges and incorporate herein the allegations contained in Paragraphs 1 through 89 above as if fully stated herein.

91.

Mr. Trammell was seen, but not properly treated, by SHP medical staff on numerous occasions while he was detained at Chambers County Jail.

92.

Mr. Trammell was first seen at Intake on January 7, 2020, where it was noted that he refused to sign documents and believed he was being tracked.

93.

Upon Intake on January 7, 2020, Mr. Trammell also showed obvious signs of mental instability and need for an immediate mental health evaluation and medication.

- 23 -

94.

SHP staff should have been aware that Mr. Trammell was on medication for schizophrenia based on his prior detention at Chambers County Jail.

95.

Mr. Trammell's mental illness was obvious to a lay person.

96.

On January 13, 2020, Mr. Trammell was seen by a Southern Health staff and not properly evaluated. At this time Mr. Trammell had vomited in his cell a few times. Instead of addressing Mr. Trammell's medical condition and having Mr. Trammell properly evaluated and/or hospitalized for gastrointestinal issues, Nurse Practitioner Cofield prescribed Omeprazole in the mornings and no other prescriptions were ordered.

97.

Nurse Joanne Work noted that she administered Mr. Trammell Omeprazole in the mornings from January 13, 2020, through January 20, 2020, where she noted it was discontinued per "inmate". At that time, Nurse Work did not contact the physician regarding Mr. Trammell's behavior or request that he be furtherly medically evaluated.

98.

Nurse Joanne Work saw Mr. Trammell on numerous occasions during the 29 days that he was detained at Chambers County Jail but refused to provide him medical care.

99.

Nurse Joanne Work was aware that Mr. Trammell was "refusing" meals and/or unable to eat but refused to have him medically evaluated.

100.

Nurse Work was also aware of his dramatic weight loss until the day he died. Nurse Work did nothing medically to intervene and/or evaluate Mr. Trammell's weight loss or constant meal refusals and/or refusal to eat.

101.

Nurse Practitioner Cofield was also aware of Mr. Trammell's vomiting, alleged "refusal" to eat and severe weight loss. Despite Nurse Cofield's knowledge of his condition Nurse Cofield did not refer Mr. Trammell for medical evaluation or do anything to address his medical condition.

102.

On January 20, 2020, it was reported that Mr. Trammell refused medical treatment. This document was not signed by Mr. Trammell. No mental health professional was contacted to address Mr. Trammell's alleged refusal of medical

care. The medical care that Mr. Trammell allegedly refused was also not identified and the reasons for the alleged refusal was also not documented which is against company policy.

103.

SHP Medical director was aware of Mr. Trammell's alleged refusal to sign the refusal of medical treatment form and did not attempt to evaluate Mr. Trammell, contact mental health, learn his medications, or provide him with any medical help.

104.

Mr. Trammell's medical condition had become well-known at the jail by personal observation and otherwise.

105.

Plaintiff asserts this count against Defendants Southern Health Partners, Nurse Joanne Work, Nurse Practitioner Cofield and John and Jane Doe (hereinafter collectively referred to as "SHP Defendants").

106.

At all material times hereto, SHP Defendants were charged with the duty of using due and proper care in treating, caring for, and attending to Mr. Trammell.

107.

The standard of care for nurses is the reasonable degree of care and skill which, under similar conditions and like circumstances, is ordinarily employed by

- 26 -

the profession generally whether the patient is detained or in a public hospital environment.

108.

The standard of care for nurse practitioners in treating patients in general and in confinement includes:

a. Assess the patient/client in a systematic, organized manner;

b. Formulate a nursing diagnosis based on accessible, communicable, and recorded data (which is collected in a systematic and continuous manner);

c. Plan care which includes goals and prioritized nursing approaches or measures derived from the nursing diagnoses;

d. Implement strategies to provide for patient/client participation in health promotion, maintenance, and restoration;

e. Initiate nursing actions to assist the patient/client to maximize his/her health capabilities;

f. Evaluate with the patient/client the status of goal achievement as a basis for reassessment, reordering of priorities, new goal-setting and revision of the plan of nursing care;

g. Communicate, collaborate, and function with other members of the health team to provide optimum care;

h.    Respect the dignity and rights of the patient/client regardless of socioeconomic status, personal attributes, or nature of health problems; and

i. Provide care without discrimination on the basis of diagnosis, age, sex, race, creed, or color.

109.

The standard of care for a licensed practical nurse treating patients in general and in confinement includes:

a.    Participating in patient assessment activities and the planning, implementation, and evaluation of the delivery of health care services and other specialized tasks when appropriately educated and consistent with board rules and regulations;

b.    Providing direct personal patient observation, care, and assistance in hospitals, clinics, nursing homes, or emergency treatment facilities, or other health care facilities in areas of practice including, but not limited to: coronary care, intensive care, emergency treatment, surgical care and recovery, obstetrics, pediatrics, outpatient services, dialysis, specialty labs, home health care, or other such areas of practice;

c. Performing comfort and safety measures;

d. Administering treatments and medications by various routes;

e. Participating in the management and supervision of unlicensed personnel in the delivery of patient care; and

f. Performing other specialized tasks as appropriately educated.

110.

SHP Defendants had a duty to Mr. Trammell to practice nursing within the standard of care and violated the standard of care for nurses by failing to care for Mr. Trammell.

111.

Nurse Joanne Work, Nurse Cofield and all SHP medical staff at Chambers County Jail failed to properly evaluate Mr. Trammell and/or send him to the hospital for care and treatment when they were aware of his condition.

112.

The SHP nurses' and medical staff failure to properly care for Mr. Trammell caused his death on February 5, 2020.

113.

At all times pertinent hereto, SHP nurse defendants and/or medical providers were acting within the course and scope of their employment with SHP.

114.

SHP is liable for acts and omissions of the nurses and medical staff under the doctrine of respondeat superior, agency or apparent agency.

115.

SHP is also liable for improperly providing medical care at Chambers County Jail and failing to have appropriate medical personnel staffed to address the medical needs of detainees, including but not limited to Mr. Trammell.

## COUNT III
## PUNITIVE DAMAGES AND ATTORNEYS' FEES

116.

Plaintiff re-alleges and incorporate herein the allegations contained in Paragraphs 1 through 115 above as if fully stated herein.

117.

The acts and omissions of defendants as alleged show intent, willful misconduct, malice, fraud, wantonness, oppression and/or that entire want of care which raised the presumption of conscious indifference to the consequences entitling Plaintiff to an award of punitive damages in an amount sufficient to deter Defendants from the same or similar actions in the future in accordance with 42 U.S.C. Section 1983.

118.

Defendants were malicious towards Mr. Trammell because he was a detainee at the Chambers County Jail and did not believe he was entitled to the right to adequate medical care as secured by the United States Constitution.

- 30 -

119.

Defendants' conduct was done with reckless disregard of Mr. Trammell's rights and all Chamber County Jail detainees and inmates similarly situated to Mr. Trammell.

120.

The acts and omissions of Defendants justify an award of punitive damages to Plaintiff.

121.

Per 42 U.S.C. Section 1983 Plaintiff is entitled to attorney fees for bringing this action.

## **DAMAGES**

122.

Plaintiff is entitled to recover as the Personal Representative of Charles Trammell, Sr. for all damages allowed by law for wrongful death and civil rights violations.

## **JURY TRIAL DEMANDED**

123.

Plaintiff demands a trial by a jury on all matters that can be so tried.

WHEREFORE, Plaintiff respectfully requests this Court enter Judgment against Defendants for wrongful death damages, attorney fees, costs, and all other relief the Court deems just and equitable.

This 31st day of January, 2022.

Respectfully submitted,

*Timothy Gardner*

**TIMOTHY J. GARDNER**
Georgia Bar No. 115430

*Attorney for Plaintiff*

Gardner Trial Attorneys, LLC
3100 Cumberland Blvd.
Suite 1470
Atlanta, GA 30339
Phone:  770.693.8202
Fax:  404.393.9838
tjg@gardnertrialattorneys.com

**PLAINTIFF WILL SERVE EACH DEFENDANT BY PERSONAL PROCESS SERVER AND CERTIFIED MAIL ISSUED BY COURT:**

Shambria Bullard
105 Alabama Avenue West
LaFayette, Alabama 36862

Robert Hull
105 Alabama Avenue West
LaFayette, Alabama 36862

Willie Lee, Jr.
105 Alabama Avenue West
LaFayette, Alabama 36862

Correctional Officer Ivey
105 Alabama Avenue West
LaFayette, Alabama 36862

Corporal Hammond
105 Alabama Avenue West
LaFayette, Alabama 36862

Corporal J Burns
105 Alabama Avenue West
LaFayette, Alabama 36862

Joanne Work
105 Alabama Avenue West
LaFayette, Alabama 36862

Nurse Practitioner Cofield
105 Alabama Avenue West
LaFayette, Alabama 36862

Southern Health Partners, Inc.
c/o CT Corporation, Register Agent
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama 36109; c

- 33 -